## NOAH STEWART *v.* THE STATE.

1. INDICTMENT FOR AN ASSAULT WITH INTENT TO MURDER, by shooting, charged that the assault was made "feloniously, unlawfully, willfully, and with malice aforethought," and repeated this verbiage in alleging the shooting, but did not reiterate it in charging the specific intent, "then and there to kill and murder him," etc. *Held,* that the felonious and malicious intent is sufficiently alleged.

2. CHARGE OF THE COURT. — In a trial for assault with intent to murder, the jury were charged that "in all criminal cases the defendant is presumed to be innocent, and unless the jury are satisfied from the evidence of the guilt of the defendant, beyond a reasonable doubt, they should acquit." *Held,* that the language of this instruction does not limit its applicability to 'the minor degrees of offense comprised in the indictment.

3. VERDICT. — The judgment entry recites that thereupon "came a jury of twelve good and lawful men, consisting of J. R. and eleven others," etc., but subsequently states that "said *grand* jury returned into open court the following verdict," etc. *Held,* that the word *grand* is obviously a clerical error, and does not vitiate the verdict.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The accused and Henry Wallace were freedmen, residing in a suburb of the city of Austin, exclusively inhabited by freedmen. Wallace lived with his sister at one end of the street which constitutes the settlement, and near the other end, some 200 yards distant, his mother lived. Stewart, the accused, and his wife lived in a house intermediate between Wallace and his mother.

One night, about November 1, 1877, some person threw a number of stones at the house of Wallace and his sister, and the next morning he perambulated the street, vociferating that he would whip any G——d d——d man who would come out and say he was the man who threw the stones. While Wallace was thus engaged, and after he had· for the third time passed Stewart's house, the latter came out in the street and cried out that whoever said that he or his wife threw the stones was a d——d liar. Thereupon Wallace walked back, and, according to himself and several other State's witnesses, told Stewart that he did not say that he or his wife threw the stones, whereupon Stewart repeated his previous expression, and Wallace his, with the addition that, by G——d, Stewart couldn't scare him; and at this stage of the argument Stewart fired away with a pistol, hitting Wallace once in the wrist, once in the arm, and a third time in the rear — the target having apparently "changed front."

According to the defendant's best witness, his father-in-law, Wallace, in his perambulations, had made it a point to stop in front of Stewart's house and shout out volleys of threats and abuse upon the whole household, and especially insulting to Stewart's wife. And, according to this witness, Wallace, when he walked back to Stewart, stepped close up to him, saying, "Who are you, Stewart? I ain't afraid of you, G——d d——n you;" and shook his fist in Stewart's face, saying, "Shoot, G——d d——n you, shoot"— a request with which, it seems, Stewart promptly complied.

The opinion and head-notes disclose all other material facts.

*Jones, Cullen & Trigg,* for the appellant. The court erred in overruling motion to quash the indictment.

No battery being alleged, there should be an averment of " ability to commit battery."

Our statute, like that of Indiana, expands the definition of assault, to the extent of the words quoted, " and the assault must be alleged in the terms of the statutory definition. " See Bishop's Stat. Cr., and precedent furnished, p. 341, secs. 513, 514; and *Adell* v. *The State,* 34 Ind. 543, 545, 546 ; *Cato* v. *The State, ante,* p. 87.

Secondly, the intent with which the assault purports to have been committed is not alleged with sufficient precision and particularity. The intent, in this case, is the material fact — the very essence of the offense, the cause of action and foundation of punishment — and should be stated and described in the indictment. See precedent above, and secs. 502–510, same author ; *White* v. *The State,* 1 Texas Ct. App. 211, and cases therein cited ; also, Pasc. Dig., art. 2866.

The reasoning in these cases is forcible, and applies with equal, perhaps with more, force in a case like this, for the simple reason that murder is an offense of greater magnitude than burglary, rape, or larceny. The count concluding this indictment should read, " with the intent feloniously, purposely, and with malice aforethought, to kill and murder," thereby specifically and clearly distinguishing it from other offenses compounded with the offense of assault.

We can readily imagine circumstances attending assaults to rape and rob authorizing, in full, the objectionable averment ending this indictment, especially with the allegations preceding it ; and hence, we believe, arises the necessity of

precision·in describing the intent with which all mingled offenses are committed.

Burglary is the fraudulent entry of a house to commit a felony ; but it does not answer to say, " theft from a house," or " to commit rape," or " to murder A B," in describing the felony designed to be perpetrated in the house by the fraudulent entry.   These offenses must be defined in a manner clearly indicating the intent.   And, so, in assaults to rob and to rape, we must say, " to fraudulently take property without consent," etc., and to " carnally know without consent," etc., as being properly descriptive of the purpose with which the assault is committed.   Surely in murder, with equal strictness, the like rule should obtain.   *White* v. *The State*, 1 Texas Ct. App. 211.

It is immaterial whether the wife was present at the time of the use of the insulting words by Wallace.   The husband was present, and he heard them.

The emotions of anger, rage, and resentment were stirred to their depths ; fear, perhaps, imposed its momentary restraint ; but in this instance, fear, by the circumstances of the place where, and the conduct of Wallace, was goaded into resistance.   " Insulting words to a female relation," however, is essentially " an adequate cause," reducing homicide to manslaughter.   It is axiomatic — the statute makes it so.   Yet, the word " towards " has two meanings — a physical and moral one — and in an instance of this kind the two meanings may combine or stand separate.   It may imply a direct address to the female relation present, or imply " reference to " or " concerning of" a female relation not present.   In this case she was not present.   Then connect with the phrase, " insulting words," the phrase, " or conduct ;" the physical meaning, or the meaning carrying the implication that the female must be present, is injected with great force into the charge of the

court, there being no insulting *conduct* toward the female relation in this case, as she was absent. Thus, it will be seen that the statutory defense is made to destroy itself; and the argument for the State, released to roam at large, is clinched against the defendant by the instruction of the court.

*George McCormick*, Assistant Attorney-General, for the State.

ECTOR, P. J.   Exceptions were taken in the court below to the indictment, because, as alleged, the same is too vague and indefinite as to the offense attempted to be charged, and because it fails to charge any felonious or malicious intent on the part of the defendant to commit the offense of an assault with intent to murder.  The court properly overruled the motion to quash the indictment. *Nash* v. *The State*, 2 Texas Ct. App. 363, and cases there cited.

The charge of the court, taken as a whole, we believe, submitted the law of the case to the jury. The instruction of the court, in the second paragraph of the charge, upon the subject of reasonable doubt, did not restrict it to a simple assault, as is urged by the counsel for defendant. The language used by the court in the second paragraph of the charge will not admit of that construction; on the contrary, the jury are told that "in all criminal cases the defendant is presumed to be innocent, and, unless the jury are satisfied from the evidence of the guilt of the defendant, beyond a reasonable doubt, they should acquit."

Whenever it appears, upon a trial for an assault with intent to murder, that the offense would have been murder had death resulted therefrom, the person committing such assault is deemed to have done the same with that intent. We believe that the court, in the charge to the jury, correctly defined murder, and properly instructed them as to

the facts and circumstances under which a homicide would be murder.

The jury were then told what would reduce a voluntary homicide to manslaughter, and what would not. *Farrar* v. *The State*, 42 Texas, 263; *Brown* v. *The State*, decided by this court at its present term, *ante*, p. 275.

The defense relied on is, that Wallace provoked the difficulty; that he used vulgar and insulting words towards the wife of the defendant, immediately before he was shot by the defendant; and that such language reduced the offense, if any was committed by defendant, below the grade of an assault with intent to murder; that if the defendant had shot and killed Wallace, under the circumstances he would, at most, have been guilty of manslaughter.

The court instructed the jury that "insulting words or conduct of the person killed towards a female relation of the party guilty of the homicide will reduce a voluntary homicide to manslaughter." It is insisted that this portion of the charge was too general; that "the word *towards* has two meanings — a physical and a moral one — and in an instance of this kind the two meanings may combine or stand separate. It may imply a direct address to the female relation present, or imply 'reference to' or 'concerning of' a female relation not present. In this case she was not present. Then connect with the phrase 'insulting words' the phrase 'or conduct;' the physical meaning, or the meaning carrying the implication that the female must be present, is injected with great force into the charge of the court, there being no insulting conduct toward the female relation in this case, as she was absent." The objection, we think, is too hypercritical. This part of the charge of the court is in the exact language of subdivision 4 of article 599 of the Code (Pasc. Dig., art. 2254), and if the jury believed from the evidence that any insulting words or conduct were used by Wallace towards the wife of the defendant, at the time

he shot Wallace, we think they were sufficiently instructed as to the law on this point to render an intelligent verdict. If the counsel for the defendant believed that this portion of the charge did not fully and explicitly embody the law, or that it was liable to misconstruction by the jury, and needed further explanation from the court, they should have asked an additional charge. The record shows that no exception was taken by the defendant to the charge of the court, and that no additional instructions were asked by either party.

The statement of facts shows a conflict of evidence. If the witnesses of the State are to be believed — and they are more numerous than those on the part of the defense — Wallace, the person assaulted, used no insulting words or conduct towards any female relation of the defendant, or towards any female under his protection; and was entirely unarmed when he was shot, and then making no hostile demonstration towards the defendant. Sufficient evidence was introduced by the State to warrant the jury in finding the defendant guilty of an assault with intent to murder.

There was a conflict in some material points between the testimony given by the State's witnesses and that produced on the part of the defendant. The jury had the witnesses before them, and were the best judges of their credibility. If there was a discrepancy or conflict in their testimony, it was in the province of the jury to reconcile it, if possible; and if they could not do this, to give credence to the witnesses who, in their opinion, were best entitled to it. They have chosen to disregard the statements of defendant's witnesses, and give credit to the evidence offered by the State. The judge who tried the case in the lower court had an opportunity of seeing the manner of the witnesses at the time of giving their testimony, and of hearing them testify. He did not see proper to set aside the verdict.

It is contended by the defendant that it appears from

the record that the verdict in this case was returned into open court by the *grand* jury.   We make the following extract from the record-entry of the trial, plea, and verdict in this case :

"Whereupon came a jury of twelve good and lawful men of Travis County, consisting of J. E. Raney and eleven others, who, being duly elected, tried, impaneled, and sworn according to law, heard the indictment read, the defendant's plea of not guilty, the evidence, argument of counsel, and the charge of the court, and retired to consider of their verdict ; and thereupon, after due deliberation, said grand jury returned into open court the following verdict, to wit : 'We, the jury, find the defendant guilty of an assault with the intent to murder, and assess his punishment at five years in the penitentiary.   J. E. Raney, foreman.' "

Evidently the words "grand jury," as in the above extract, are a clerical error, and we do not think it vitiates the verdict and judgment herein.   At the same time, there is no sufficient excuse for such errors in any transcript. The mistake was probably made by the clerk, and overlooked by the presiding judge and the county attorney when the minutes of the court were read, or was made by the clerk in preparing the transcript for this court.   We think it is obvious, from the recitals in the entire record bearing on this point, that the verdict was found and returned by the petit jury, who were duly elected, tried, impaneled, and sworn in the case.

We see no reason why this court should disturb the judgment of the court below, and it is, therefore, affirmed.

*Affirmed.*